No. 17,487.

THE TONGUE CREEK ORCHARD COMPANY, ET AL. *v.* TOWN
OF ORCHARD CITY
(280 P. [2d] 426)

Decided February 21, 1955.   Rehearing denied March 14, 1955.

Messrs. SPARKS & CONKLIN, attorneys for plaintiffs in
error.

Messrs. STEWART & BROWN, attorneys for defendant
in error.

*En Banc.*

MR. JUSTICE LINDSLEY delivered the opinion of the
Court.

Petitioner herein, defendant in error, sought a change
of point of diversion of a water right, and plaintiffs in

error appeared as objectors thereto. We shall refer to the parties as they appeared in the trial court.

Petitioner, Orchard City, is an incorporated town situated in the County of Delta, State of Colorado. In the latter part of 1953 petitioner purchased from Earl A. Johnson and Nellie E. Johnson certain ranch property located in Delta county. This property is hereinafter referred to as the Johnson Ranch. With this purchase was included forty-nine (49) shares of the capital stock of the Lake Fork Ditch Company, which is a mutual ditch company organized for the purpose of conveying irrigation waters to the stockholders thereof.

The Lake Fork Ditch Company, in the general adjudication proceedings of 1889 in Water District No. 40, State of Colorado, was awarded priority Number 8, for the right to use 10.15 cubic feet of water per second of time from Ward Creek, and for 4.35 second feet of water from Kiser Creek, both tributaries of Forked Tongue Creek.

Petitioner shortly after the purchase of the Lake Fork ditch stock, above mentioned, initiated proceedings in the district court of Delta county to change the point of diversion of the water represented by forty (40) of the forty-nine (49) shares of the capital stock of the Lake Fork Ditch Company; to wit, approximately one cubic foot of water per second of time, from the headgates of the Lake Fork Ditch on Ward and Kiser Creeks into the petitioner's pipeline, the headgate of which is on Ward Creek and Kiser Creek, and also for a change in the place and manner of use to domestic and municipal purposes, as well as irrigation purposes; the remaining nine (9) shares, and the use of the water appurtenant thereto, to remain upon the Johnson Ranch.

To this petition for a change of point of diversion the objectors, all owners of junior decrees from the Forked Tongue Creek basin, filed a protest, asserting that the removal of approximately one cubic foot of water from the Johnson Ranch would injuriously affect objectors' decrees.

Forked Tongue Creek comes into existence at the junction of Dirty George Creek and Ward Creek, and above and below this juncture there are numerous decrees for water, a majority of which are owned by objectors.

Objectors own a total of twenty-two irrigation decrees from the Forked Tongue drainage basin and tributaries thereof, which are junior to the Lake Fork Ditch decree. These decrees total 50.94 cubic feet of water per second of time. Fifteen of these decrees are from Dirty George Creek for 33.62 cubic feet of water, four are from Forked Tongue Creek proper for 8.35 cubic feet, and the remaining three decrees are from Happy Hollow Gulch for 8.97 cubic feet. It should be noted at this point that Happy Hollow Gulch has no head waters of its own and depends for its source of supply upon waste, seepage, and drainage from the irrigation in the area involved.

Intermingled with objectors' decrees are a number of other decrees senior to that of objectors. Except for periods in exceptionally wet years there is not sufficient water in the Forked Tongue Creek and its tributaries to satisfy all decrees. In many seasons, some of the objectors obtain no water at all under their decrees.

Forked Tongue Creek, and its tributary Happy Hollow Gulch which has no head waters of its own, converge near the lower end of the irrigated areas.

The Johnson Ranch is located upon a mesa situated between Forked Tongue Creek and Happy Hollow Gulch, a short distance above the confluence of Happy Hollow Gulch and Tongue Creek. The east and west sides of the Johnson Ranch slope off sharply into the respective watersheds in between which there is an irrigated mesa.

There is no objection to the diversion from one headgate to another by any objector situated between the present headgates and the proposed new headgates, the objection being the loss of return flow or seepage and waste water after it is used at the present place of irrigation. There likewise is no objection that the diversion

itself would increase the "duty" or enlarge the use of the water.

The trial court found that 60 per cent of the water used upon the Johnson place was discharged therefrom as waste water, one-third of which flowed to the west and two-thirds to the east.

The trial court also found that the one-third of the waste water flowing to the west did not reach Forked Tongue Creek itself, but was intercepted by the Perkins Ditch, which lay between the Johnson Ranch and Forked Tongue Creek, and that this interception of the Johnson waste water was below the headgate of the Perkins Ditch upon the Forked Tongue Creek, and that said water constituted no part of the Perkins Ditch decree.

The court further found that the two-thirds of the waste water from the Johnson Ranch, which flowed easterly into the Happy Hollow Gulch, was a "small amount"; that previous diversions of like water had not affected the supply in said Happy Hollow Gulch; that there would be no substantial injury or damage to the objectors; and that approximately one-half of the water users served by the pipeline of the Town of Orchard, into which the petitioner seeks to divert about one cubic foot of Johnson water, are so situated that the return and waste water from their system actually returns to Tongue Creek basin.

The court also found that a majority of the water users of petitioner would use the water for domestic and livestock purposes during the winter months while water tributary to the natural streams in this area, including the proposed Johnson water, would be stored in the reservoir of petitioner far upstream to the tributaries of Tongue Creek, and thereby eliminate the necessity of releasing said reservoir water during the winter months to the ditches and streams, which, under the objectors' decrees, are for livestock and domestic purposes.

The court further found that the fact that these objectors may have used such waste water from the Johnson

Ranch in the past, gives them no right or control over the same. Neither does it obligate the owner to continue to maintain conditions so as to supply appropriators of waste water at any time or any quantity when acting in good faith.

Objectors specify error to the findings and conclusion of law of the trial court to the effect: 1. That the objectors have no vested right in the return waters from the Johnson Ranch. 2. That the loss of the return water to Happy Hollow Gulch would not injure the objectors. 3. That the Johnson Ranch waste water flowing towards Tongue Creek was intercepted by the Perkins Ditch and forms no part of the decreed rights of the Perkins Ditch.

As to the first specification of error, that the objectors have no vested right in the return waters from the Johnson Ranch, the court correctly announced and applied the law. There is no obligation upon an owner to continue to maintain conditions so as to supply water to appropriators of waste water at any time or in any quantity when acting in good faith.

In *Burkart v. Meiberg*, 37 Colo. 187, 86 Pac. 98, the defendants owned and irrigated, from a natural stream, a tract of land, the natural slope of which was past plaintiff's land. Plaintiff, by constructing a ditch upon her own land parallel with the common boundary line, had for many years intercepted the surface drainage from defendants' land and used it for irrigating her lands. The defendants later constructed upon their own land a ditch parallel to plaintiff's ditch to intercept such surface drainage and carry it around plaintiff's land, and irrigated another tract owned by them. The court held that there was no valid appropriation of such waste water as against defendants so as to prevent such action upon their part, and that the same is true although defendants later sold such adjoining tract of land and continued to use such surface drainage with the consent of the vendee, upon the tract of land below that of plaintiff. At page 190, the court calls attention to the fact

that, "The plaintiff does not assert the right to the use of this water by virtue of an appropriation made from the same stream, or any of its tributaries, which are the source of defendant's supply."

We call attention to the fact that, in the instant case, Happy Hollow Gulch is a water course which has no head waters of its own and depends for its source of supply upon waste water of irrigators, among which is the Johnson water here involved.

So, also, the case of *Green Valley Ditch Company v. Schneider,* 50 Colo. 606, 115 Pac. 705, in which Mr. Justice Gabbert, author of the opinion, stated: "Plaintiff's rights were limited and only attached to the water discharged from the Tegeler Lateral, whatever that happened to be, after the defendants and cross-complainants had supplied their own wants and necessities. This does not vest her with any control over the ditches or laterals of appellants, or the water flowing therein, nor does it obligate appellants to continue or maintain conditions so as to supply plaintiff's appropriation of waste water at any time or in any quantity, when acting in good faith—*Mabee v. Platte Land Co.,* 17 Colo. App. 476; the *Fairplay Hy. M. Co. v. Weston,* 29 Colo. 125."

Likewise, in Kinney on Irrigation and Water Rights, 2nd ed., volume 2, page 1151, section 661, is the following: "The authorities hold that while the water, so denominated as waste water, may be used after it escapes, no permanent right can be acquired to have the discharge kept up, either by appropriation, or a right by prescription, estoppel, or acquiescence in its use while it is escaping, and that, too, even though expensive ditches or works were constructed for the purpose of utilizing such waste water, unless some other element enters into the condition of affairs, other than the mere use of the water. In other words, the original appropriators have the right, and in fact it is their duty to prevent, as far as possible, all waste of the water which they have appropriated, in order that the others who are entitled

thereto may receive the benefit thereof." Also, section 662, at page 1153: "After water has been appropriated and diverted from a natural stream into ditches, canals, or other artificial works, it becomes personal property and cannot be appropriated from such works."

It should be borne in mind that the waters in Happy Hollow Gulch consist of waste and return waters and that the Gulch has no head waters of its own. We know of no law which compels a party to use his water right, and if the Johnson water right were to be abandoned, and none of it used, the return waters thereof would flow into Kiser Creek and Ward Creek, tributaries of the Forked Tongue Creek and not into Happy Hollow Gulch, and therefore the loss of the return waters from the Johnson place would not be part of the alleged stream upon which objectors' appropriations from Happy Hollow Gulch were made and to which they urge they would be entitled to have conditions maintained upon the stream as of the time of their appropriation.

As to the second specification of error, that the loss of the return water to Happy Hollow Gulch would not injure the objectors, this finding was made by the trial court upon conflicting evidence. In view of the law applicable to the case, above cited, in our treatment of the right to the waste water from the Johnson Ranch, this assignment of error becomes immaterial.

As to the error specified that the waste water from the Johnson Ranch, which flowed westerly into Forked Tongue Creek, was intercepted by the Perkins Ditch, and is no part of the Perkins decree, the evidence is clear that this water consisted of one-third of the waste water; and further that 60 per cent of the water used upon the Johnson place left it as waste water; and that no portion of the same entered Forked Tongue Creek above the Perkins headgate, and therefore, under the authorities cited above, the trial court also was correct in its finding, as to the water flowing westerly into the Perkins Ditch.

184

For the above reasons, we hold that the judgment of the trial court was correct; and accordingly it is hereby affirmed.