## No. 26996

**The City of Boulder, Colorado, a Municipal Corporation v. The Boulder and Left Hand Ditch Company, a Mutual Ditch Company, The North Boulder Farmers Ditch Company, a Mutual Ditch Company, W. G. Wilkinson, Division Engineer of Water Division No. 1 of the State of Colorado, and C. J. Kuiper, State Engineer of the State of Colorado**

(557 P.2d 1182)

Decided December 13, 1976. Opinion modified and as modified rehearing denied January 10, 1977.

220

Walter L. Wagenhals, City Attorney; Moses, Wittemyer, Harrison and Woodruff, P.C., Raphael J. Moses, for plaintiff-appellant.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, David W. Robbins, Assistant, Donald H. Hamburg, Assistant; Hutchinson, Black, Hill, Buchanan and Cook, James W. Buchanan; Vranesh and Musick, for defendants-appellees.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The City of Boulder (Boulder) filed a complaint in the District Court of Water Division No. 1 (court) against The Boulder and Left Hand Ditch Company (Left Hand) and the North Boulder Farmers Ditch Company (Farmers). Boulder requested injunctive relief against the transportation of water for use in another watershed. The court sustained the defendants' motion to dismiss on the ground that the complaint did not state a claim

upon which relief could be granted. We reverse.

The facts here set forth are taken from the allegations of the complaint. We follow the familiar rule that, as to a motion to dismiss a complaint, facts well pleaded in the complaint are deemed to be admitted. Each of the parties is a decreed appropriator of water out of Boulder Creek. Left Hand and Farmers are mutual ditch companies. Their decrees are for irrigation and are prior to that of Boulder.

The ditch of Farmers (Farmers Ditch) has been used for more than 100 years for the irrigation of lands in the Boulder Creek watershed and the return flow from such irrigation proceeds to Boulder Creek.

The water decreed to the ditch of Left Hand (Left Hand Ditch) for almost 100 years has been used upon lands, the return flow of which returns largely to Dry Creek and South St. Vrain Creek.[1]

The two mutual ditch companies have the same point of diversion out of Boulder Creek, being within the city limits of Boulder, and they utilize a common lateral for the first one and one-half miles from the point of diversion. Then, the ditch of each company proceeds from the lateral to the respective irrigated area served by each.

During the irrigation season, with the consent of Farmers, Left Hand is diverting and transporting in its ditch some of the water decreed to Farmers.[2] If this diversion were not made, the historic return flow therefrom would be used by appropriators out of Boulder Creek, upstream from its confluence with South St. Vrain Creek. Absent this return flow Boulder must permit the same portion of its decreed water to remain in Boulder Creek in order to satisfy the decree of these intervening appropriators.

There has been no decree permitting the change of place of use of the water involved. In the absence of such a decree, the plaintiff contends that it is entitled to injunctive relief whereby Left Hand would be prohibited from diverting the water from the watershed in which it has been historically used.

The fundamental basis for the dismissal of the complaint by the water judge was the rulings of this court in *Metro Denver Sewage v. Farmers Reservoir*, 179 Colo. 36, 499 P.2d 1190 (1972), and *Tongue Creek v. Orchard City*, 131 Colo. 177, 280 P.2d 426 (1955). For reasons which we

---

[1] The complaint refers to the "South St. Vrain River" but, as we believe it is usually referred to as "South St. Vrain Creek", we use the latter designation. We take judicial notice of the fact that the confluence of Boulder Creek and South St. Vrain Creek is at a point about 15 miles northeasterly from the City of Boulder; and that Dry Creek flows into St. Vrain Creek about 2 miles upstream or westerly from the point of such confluence.

[2] While we have not noted mention of the fact in the complaint nor the decree, it appears from one of the briefs that Left Hand owns stock in Farmers and as a result is entitled to rights in the Farmers Ditch water represented by such stock. This portion of Farmers Ditch water, which Left Hand is taking out of the immediate watershed of Boulder Creek, is the subject of this action.

will later elaborate, these cases are distinguishable.

■ It has been fundamental law in this state that junior appropriators have rights in return flow to the extent that they may not be injured by a change in the place of use of the irrigation water which provides that return flow. The basic principles were stated in *Farmers Highline Canal v. Golden*, 129 Colo. 575, 272 P.2d 629 (1954), as follows:

"There is absolutely no question that a decreed water right is valuable property; that it may be used, its use changed, its point of diversion relocated; and that a municipal corporation is not precluded from purchasing water rights previously used for agricultural purposes and thereafter devoting them to municipal uses, provided that no adverse affect be suffered by other users from the same stream, particularly those holding junior priorities.

"Equally well established, as we have repeatedly held, is the principle that junior appropriators have vested rights in the continuation of stream conditions as they existed at the time of their respective appropriations, and that subsequent to such appropriations they may successfully resist all proposed changes in points of diversion and use of water from that source which in any way materially injures or adversely affects their rights. [Citing cases]."

■ *Farmers Highline* stands for the proposition that any change of use will be granted only upon conditions which will prevent injury to junior appropriators. *See Brighton Ditch Co. v. Englewood*, 124 Colo. 366, 237 P.2d 116 (1951); *Enlarged Southside Ditch Co. v. John's Flood Ditch*, 116 Colo. 580, 183 P.2d 552 (1947); *Fort Collins Milling Co. v. Larimer and Weld Irr. Co.*, 61 Colo. 45, 156 P. 140 (1916); and *Vogel v. Minnesota Canal Company*, 47 Colo. 534, 107 P. 1108 (1910). For present statutory provisions under the Water Right Determination and Administration Act of 1969, *see* sections 37-92-103(5), 304(3) and 305(3), C.R.S. 1973. The substantive law here involved has not been changed by this statute.

■ The basic fallacy in the ground of decision used by the water judge is his statement, "there is no distinction . . . between waste water from irrigation and return flow water from irrigation . . . ." Waste water is, as its name implies, water wasted or not used by the irrigator. The typical example is that of the irrigator who turns into the individual furrows traversing his field from his head ditch more water than is needed to seep into the ground. That which is not absorbed into the earth remains at the end of the furrow and is collected in a waste ditch. The contents of the waste ditch is waste water. When this waste water so collected runs in the waste ditch to the stream, the law is that one who appropriates the waste water from the stream cannot assert a right to have the irrigator continue to discharge the waste water into the stream. In *Tongue Creek v. Orchard City, supra*, Mr. Justice Lindsley aptly quoted from *Kinney on*

*Irrigation and Water Rights,* 2nd ed., volume 2, page 1151, section 661:
"'The authorities hold that while the water, so denominated as waste water, may be used after it escapes, no permanent right can be acquired to have the discharge kept up, either by appropriation, or a right by prescription, estoppel, or acquiescence in its use while it is escaping, and that, too, even though expensive ditches or works were constructed for the purpose of utilizing such waste water, unless some other element enters into the condition of affairs, other than the mere use of the water. In other words, the original appropriators have the right, and in fact it is their duty to prevent, as far as possible, all waste of the water which they have appropriated, in order that the others who are entitled thereto may receive the benefit thereof.'"

As appears from the foregoing, *Tongue Creek* stands for the proposition that no permanent right can be obtained by the attempted appropriation of waste water. More specifically, in the absence of bad faith, an appropriator of waste water cannot obtain a right against the water waster to compel continuation of the waste water discharge. *See Green Valley Co. v. Schneider,* 50 Colo. 606, 115 P. 705 (1911).

Thus, at the time *Metro Denver Sewage v. Farmers Reservoir, supra,* arrived here, the posture of the law was that one could not change the point of diversion or place of use of irrigation water to the injury of a junior appropriator; but that an irrigator could cease wasting his water or change the point of discharge into the stream of waste water, despite the protests of those who had attempted to appropriate it.

In *Metro Denver Sewage,* the real party in interest, Denver, was discharging at a certain place the effluent from its sewage after treatment into the same river from whence the water was diverted by Denver. Then Denver changed the point of discharge downstream, thereby preventing — or at least hindering — the user of the effluent, who had been diverting it from the stream below the old point of discharge and above the new. Thus, we were asked to determine whether we would follow the rule that one cannot change the point of diversion or place of use to the injury of a junior appropriator or the other rule that the junior appropriator has no right to the continuance — or the continuance of the place of discharge — of waste water. We elected to follow the irrigation waste water rule, saying, "in the absence of bad faith or of arbitrary or unreasonable conduct, the [waste water] rule should be applicable to sewage waste or the effluent therefrom of a municipality or sanitation district."

Return flow is not waste water. Rather, it is irrigation water seeping back to a stream after it has gone underground to perform its nutritional function. As already indicated, the law makes no distinction between change of point of diversion and change of place of use so far as the rights of junior appropriators are concerned. We made it clear in *Metro Denver Sewage* that the change of point of return of waste water or ef-

fluent is not governed by the same rules as changes of point of diversion and place of use.

We are here involved with the effect of a change of place of use because *return flow* results from *use* and not from water carried in the surface in ditches and wasted into the stream. Under the allegations of the complaint, therefore, this case should be treated as one of change of place of use and not under the rules of *Tongue Creek* and *Metro Denver Sewage.* We do not speculate as to the extent to which Boulder may prove its case, but do rule that it is entitled under the complaint to its day in court.

We also comment concerning the argument of the ditch companies that, under *Cache La Poudre Irr. Co. v. Larimer and Weld Res. Co.*, 25 Colo. 144, 53 P. 318 (1898), a mutual ditch company may change its place of use with impunity. Counsel for the mutual ditch companies here take comfort in our reference to *Cache La Poudre* in *Denver v. Just,* 175 Colo. 260, 487 P.2d 367 (1971). In *Denver v. Just* we stated that we made no comment as to whether *Cache La Poudre* has been or should be modified and stated:

"The stockholders are entitled to withdraw water from the ditch in proportion to their ownership of the stock of the corporation, which stock usually is freely transferable."

This supports the ditch companies' interpretation of *Cache La Poudre* that the law is not concerned with the transfer of irrigation waters from the land of one mutual ditch company shareholder to the land of another. *Cache La Poudre* did not so hold. The complaint in that case claimed injury from enlarged use, based upon alleged prior abandonment. This court simply held that prior use on lands of other shareholders was not an abandonment such that a changed use to the original shareholder's lands constituted an enlarged use to which juniors could object. The rule in that case is not applicable to this case.

The judgment is reversed and the cause remanded with directions to overrule the motion to dismiss the complaint, and to proceed.