Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
April 29, 2019

**2019 CO 28**

**No. 18SA216,** *Concerning the Application for Water Rights of S. Cade Huffaker and Bradley H. Huffaker in the Conejos River or its Tributaries in Conejos County;* **and No. 18SA217,** *Concerning the Application for Water Rights of Lee Crowther in the Conejos River or its Tributaries in Conejos County*—**Water Rights**—**Postponement Doctrine**—**Priority.**

These appeals concern a dispute over competing rights to irrigation tail and waste water that collects in a borrow ditch. The supreme court is asked to determine whether a driveway that interrupts the flow of water in the ditch renders the sections of borrow ditch on either side of the driveway separate sources of water for purposes of the postponement doctrine.

The supreme court holds that because the water that collects in the sections of the borrow ditch at issue here generally derives from irrigation of the same fields and because the water routinely overflows the driveway and rejoins the ditch on its northward course, the water in the ditch on either side of the driveway constitutes the same source. The postponement doctrine therefore applies to determine the relative priorities of the applicants' competing rights. Under that doctrine, the applicants who filed their application in an earlier calendar year are entitled to the senior rights. The court therefore

reverses the judgment of the water court and remands these cases with directions to revise the applicants' decrees consistent with this opinion.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2019 CO 28**

**Supreme Court Case No. 18SA216**
*Appeal from the District Court*
Alamosa County District Court, Water Division 3, Case No. 13CW3012
Honorable Pattie P. Swift, Water Judge

Concerning the Application for Water Rights of S. Cade Huffaker and Bradley H. Huffaker in the Conejos River or its Tributaries in Conejos County.

**Applicants-Appellants:**

S. Cade Huffaker and Bradley H. Huffaker,

v.

**Opposer-Appellee:**

Lee Crowther,

and Concerning

**Appellee:**

Craig Cotten, Division Engineer, Water Division 3.

**Judgment Reversed**
*en banc*
April 29, 2019

\* \* \* \* \*

**Supreme Court Case No. 18SA217**
*Appeal from the District Court*
Alamosa County District Court, Water Division 3, Case No. 16CW3013
Honorable Pattie P. Swift, Water Judge

Concerning the Application for Water Rights of Lee Crowther in the Conejos River or its Tributaries in Conejos County.

**Applicant-Appellee:**

Lee Crowther,

v.

**Opposers-Appellants:**

S. Cade Huffaker and Bradley H. Huffaker,

and

**Opposer-Appellee:**

Conejos Water Conservancy District,

and Concerning

**Appellee:**

Craig Cotten, Division Engineer, Water Division 3.

---

**Judgment Reversed**
*en banc*
April 29, 2019

---

**Attorneys for S. Cade Huffaker and Bradley H. Huffaker:**
Erich Schwiesow, PC
Erich Schwiesow
    *Alamosa, Colorado*

No appearance on behalf of Lee Crowther, Conejos Water Conservancy District, or
Craig Cotten.

**JUSTICE MÁRQUEZ** delivered the Opinion of the Court.

2

¶1     The appeals in these cases from Water Division 3 concern a dispute over rights to irrigation tail and waste water that collects in a borrow ditch[1] along a section of County Road 19 in Conejos County.  S. Cade Huffaker and Bradley Huffaker (collectively, the "Huffakers") and a neighboring landowner, Lee Crowther, filed competing applications for rights to this water.  The Huffakers filed their application in 2013; Crowther filed his in 2016.

¶2     The Huffakers argue that under the postponement doctrine, they are entitled to the senior right in the borrow ditch water because they filed their application first.  Under that doctrine, two dates are critical in determining the priority of rights adjudicated on the same source of water: (i) the date the application was filed, which sets the calendar year the water right was filed and establishes priority over filings in subsequent calendar years, and (ii) the date the first step toward appropriation was taken, which establishes the relative priority of water rights applied for in the same calendar year.  § 37-92-306, C.R.S. (2018); *Matter of Bd. of Cty. Comm'rs of Cty. of Arapahoe v. United States*, 891 P.2d 952, 964 (Colo. 1995); *see also Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 35 (Colo. 1997).

¶3     The water court held that the postponement doctrine does not apply here because it concluded that the water rights claimed by the Huffakers and Crowther do not derive from the same source.  A dirt and gravel driveway blocks the ditch as it flows north and

---

[1] A borrow ditch is a "ditch dug along a roadway to furnish fill and provide drainage." *Borrow ditch*, 2019 *Merriam-Webster Online Dictionary*, https://perma.cc/36RH-RKRZ.

channels water into a culvert that Crowther uses to deliver the water under County Road 19 to his fields. Although the water frequently overflows this driveway, runs down the road, and flows back into the ditch, eventually reaching the Huffakers' point of diversion farther north, the water court reasoned that because the driveway directs much of the water into Crowther's culvert (thus preventing it from reaching the Huffakers' point of diversion), the section of borrow ditch south of the driveway is not a source of the Huffakers' water. The court further concluded that the collection area for the Huffakers' right begins north of the driveway, not farther south at the same point as Crowther's right. Having concluded that the postponement doctrine does not apply because the rights claimed do not derive from the same source, the court held that Crowther's right to divert water at the culvert was not junior to the Huffakers' right, even though Crowther's application was filed two and a half years after the Huffakers' application.

¶4 The Huffakers appeal, again contending that the postponement doctrine applies to determine the priority of the applicants' competing rights to the water in the borrow ditch, and that they are entitled to the senior priority because they filed their application first. They further argue that the collection area of their absolute water right begins not at the driveway, but farther south (upstream) at the same point as Crowther's right. We agree with both contentions.

¶5 We hold that the water court erred in concluding that the postponement doctrine does not apply in this case. The water that collects in the sections of the borrow ditch at issue here generally derives from irrigation of the same fields; moreover, this ditch water frequently overruns the driveway, floods the road, and returns to the ditch on its

4

northward course. In short, the water in the borrow ditch south and north of the driveway constitutes the same source of water, irrespective of the driveway. Because the Huffakers and Crowther seek competing rights in the same source of water, the postponement doctrine applies, and the Huffakers are entitled to the senior right. We further hold that the water court erred in concluding that the collection area for the Huffakers' absolute right starts north of the driveway and not farther south at the same point as Crowther's right. Accordingly, we reverse the judgment of the water court, and remand these cases with directions to revise the applicants' decrees consistent with this opinion.

## I. Facts and Procedural History

¶6 The irrigation tail and waste water at issue here accumulates in the L.N. Bagwell and Sons Seepage and Drainage Ditch ("borrow ditch"), located along the western edge of Conejos County Road 19. The water in the borrow ditch varies from year to year, depending on the irrigation practices upgradient of the ditch on the west side of County Road 19. County Road R (which runs west to east) intersects County Road 19 to the north of the ditch water collection area. Lee and Grace Bagwell (collectively, the "Bagwells"), Crowther, and the Huffakers each own parcels of land to the east of County Road 19, and all deliver water from the ditch to their respective properties through culverts under County Road 19 as the water flows south to north.

¶7 The Bagwells' property lies farthest south, upstream of Crowther's and the Huffakers'. The Bagwells have a decree for the tail water that collects in the section of the borrow ditch across County Road 19 from their property. They deliver this water

5

through a series of culverts, the northernmost of which is located about 3,377 feet south of the intersection of County Road 19 and County Road R.

¶8 Crowther owns 160 acres directly north of the Bagwells' property. His property extends north up to County Road R. Crowther has delivered the borrow ditch water to his land using three culverts that run west to east, two of which are relevant here. Culvert Number 1, the southernmost of Crowther's culverts, is about 2,630 feet south of County Road R. The middle culvert, Culvert Number 2, was approximately 1,350 feet south of County Road R. Several years ago, Conejos County removed Culvert Number 2 at the request of the Huffakers, but the County has indicated it is willing to reinstall the culvert if Crowther is granted the right to divert water from the borrow ditch at this location.

¶9 The Huffakers own property immediately north of County Road R, namely, the southwest quarter of Section 8, Township 34 North, Range 10 East, N.M.P.M. (the "Huffakers' property"). In 1952, the Huffakers' great-grandfather, Luther N. Bagwell, filed a map and filing statement for the L.N. Bagwell & Sons Seepage and Drainage Ditch—the borrow ditch at issue here. Luther Bagwell owned the Huffakers' property until 1977, when he conveyed it to the Huffakers' parents. The Huffakers acquired the property in 2010. The Huffakers deliver the borrow ditch water to their land by fluming water under the intersection of County Road 19 and County Road R. From there, the water runs east in a ditch that previously was flumed over the Ephraim, Richfield, and Sanford canals to irrigate the entirety of the Huffakers' property. The flume system has since deteriorated, and only about 75 acres west of the Ephraim Ditch are currently irrigated.

6

¶10 On December 24, 2013, the Huffakers filed an application in Case No. 13CW3012, seeking absolute and conditional rights in the ditch water to irrigate their property. At this point, the Huffakers seek an absolute right to 8 cubic feet per second ("c.f.s.") from the borrow ditch to irrigate the 75 acres west of the Ephraim Ditch, and a conditional right to use the same 8 c.f.s. to irrigate another 85 acres east of the Ephraim Ditch.[2] The Huffakers measured peak flow in the borrow ditch near their point of diversion at 9.1 c.f.s. in 2016, and 7.3 c.f.s. in 2017.

¶11 The Huffakers' application seeks to use water that collects in the section of borrow ditch reaching from the Bagwells' previously decreed point of diversion at their northernmost culvert—about 3,377 feet south of the intersection of County Road 19 and County Road R—up to the Huffakers' point of diversion at that intersection. The Huffakers claim they are entitled to the water that collects in this 3,377-foot stretch of borrow ditch because the 1952 map of the L.N. Bagwell Seepage and Drainage Ditch appears to indicate that all of the water collected in the borrow ditch for one mile (or 5,280 feet) south of the intersection of County Road 19 and County Road R was intended to irrigate what is now the Huffakers' property. Their application listed May 5, 1952 as the date of appropriation.[3]

---

[2] The Huffakers' 2013 application initially sought an absolute right to 17.9 c.f.s.

[3] This date of appropriation presumably derives from the map and filing statement filed by Luther N. Bagwell, reflecting that survey work on the L.N. Bagwell & Sons Seepage and Drainage Ditch commenced on that date.

¶12 Crowther filed a statement of opposition to the Huffakers' 2013 application, claiming that he owned rights in the same ditch water. Two and a half years later, on September 29, 2016, Crowther separately filed an application in Case No. 16CW3013, seeking a decree to use a total of 10 c.f.s. from the borrow ditch: specifically, an absolute right to 7 c.f.s. at Culvert Number 1, and a conditional right to an additional 3 c.f.s. at Culvert Number 2. Crowther's application likewise listed May 5, 1952 as the date of appropriation for these rights. The Huffakers filed a statement of opposition, claiming that under the postponement doctrine, their rights to the water in the borrow ditch are senior to the rights sought by Crowther in his application.

¶13 With the parties' agreement, the water court consolidated the two cases (13CW3012 and 16CW3013). At trial, the Huffakers argued that because the competing applications here seek rights in the same water, and because the Huffakers filed their application first, they are entitled to the senior right in the borrow ditch water based on the postponement doctrine. The water court disagreed, concluding that the postponement doctrine does not apply here because the sections of the borrow ditch south and north of the driveway do not constitute the same source of water.

¶14 Immediately north of Crowther's Culvert Number 1 lies a raised dirt and gravel driveway used to enter a field lying west of County Road 19. This driveway, which has existed for at least 30 years, intersects the borrow ditch and lacks a culvert. The driveway thus blocks the water in the borrow ditch and directs water into Crowther's Culvert Number 1. However, the ditch water frequently overflows the driveway, enters the road, and collects back in the ditch north of the driveway. From there, the water continues

8

north past Crowther's other culverts where it eventually reaches the Huffakers' point of diversion at the intersection of County Road R and County Road 19.

¶15    The water court reasoned that to the extent the driveway blocks the ditch and directs water into Crowther's Culvert Number 1, the section of the borrow ditch south (upstream) of the driveway is not a source of the Huffakers' water. In so doing, the court likened the driveway intersecting the borrow ditch here to the mountain range that separates the North Fork and the South Fork of the South Platte River discussed in *South Adams County Water and Sanitation District v. Broe Land Co.*, 812 P.2d 1161, 1167 (Colo. 1991):

> In [*South Adams County*], the Colorado Supreme Court affirmed the water court's decision that the postponement doctrine did not apply to make water rights on the North Fork of the South Platte River adjudicated in 1913 subordinate to water rights adjudicated in 1889 on the South Fork of the South Platte because "the North and South Forks are separated by a high mountain range" and, thus, there could be no conflict of right between the water users on the two forks of the river.

> The situation in the current case is similar. Here, rather than a high mountain range between the points of diversion of the two water rights there is a driveway without a culvert that blocks water in the borrow ditch south of Mr. Crowther's Culvert Number 1 from travelling north into the borrow ditch north of Culvert Number 1. Much of this water is diverted into Mr. Crowther's Culvert Number 1 and cannot reach the Huffakers' point of diversion. To the extent that Culvert Number 1 stops the water from travelling north to the Huffakers' point of diversion, this portion of the borrow ditch is not a source of the Huffakers' water.

¶16    Because it concluded the source of the Huffakers' water right is different from the source of Crowther's water right, the court held the postponement doctrine does not apply and Crowther's right to divert water from the ditch at Culvert Number 1 is not junior to the Huffakers' right to this water. At the same time, the court acknowledged

9

that the water in the borrow ditch frequently overflows the driveway and returns to the ditch, eventually reaching the Huffakers' point of diversion. The court thus concluded that the Huffakers have appropriated this water—that is, the excess beyond what Crowther has appropriated through Culvert Number 1.

¶17 Based on this reasoning, the court entered decrees in 13CW3012 and 16CW3013, awarding Crowther a conditional right[4] to 7 c.f.s. of water in a collection area south of the driveway and awarding the Huffakers an absolute right to 8 c.f.s. of water in a separate collection area north of the driveway to irrigate the 75 acres west of the Ephraim Ditch. The court also awarded the Huffakers a conditional right to 8 c.f.s. of "excess water" accumulating in the ditch south of Crowther's Culvert Number 1 to irrigate 85 acres east of the Ephraim Ditch, but ruled that this conditional right is junior to Crowther's conditional right to 7 c.f.s. in this water. Further reasoning that it "serves no party to have the water spill out into the road," the court ordered the Huffakers to install a culvert under the driveway. The court also ordered the parties to share the cost of constructing a water structure that will allow Crowther to first divert his water through Culvert Number 1 and allow excess water to flow through the new culvert under the driveway and down the borrow ditch to the Huffakers' point of diversion.

---

[4] The court awarded Crowther only a conditional right to the 7 c.f.s. because he had not installed any measuring devices at his diversion structures, and the evidence at trial did not establish the amount of water he has applied to beneficial use through Culvert Number 1 or Culvert Number 2.

¶18 Finally, the court also awarded Crowther a conditional right to another 3 c.f.s. of water at his Culvert Number 2 in a collection area north of the driveway, based on the county's anticipated reinstallation of that culvert.[5] The court ordered Crowther to install a measuring device at Culvert Number 1 and a gate or other means to shut off diversion from Culvert Number 2 any time his right there is not in priority and there is an unmet call from the Huffakers on the ditch.

¶19 The Huffakers now appeal the water court's rulings.[6] The key disagreement between the Huffakers and Crowther concerns the water that collects in the stretch of borrow ditch between the Bagwells' northernmost culvert and Crowther's Culvert Number 1. The Huffakers argue that the postponement doctrine dictates that the Huffakers' 2013 application is senior to Crowther's 2016 application for water from the same source, and that the water court erred in holding otherwise. Relatedly, they argue that the water court erred in describing the collection area for the Huffakers' absolute water right as beginning at the driveway immediately north of Crowther's Culvert Number 1, rather than at the Bagwells' northernmost culvert, i.e., the Bagwells' previously decreed point of diversion 3,377 feet south of the intersection of County Road 19 and County Road R. Crowther did not file a brief in response.

---

[5] Crowther conceded that any rights diverted from Culvert Number 2 are junior to the Huffakers' claims.

[6] After consolidating 13CW3012 and 16CW3013 for trial, the court issued a combined ruling containing its findings, conclusions, judgment, and decrees. The Huffakers filed appeals in both cases.

11

## II. Standard of Review

¶20 We accept the water court's factual findings on appeal so long as they find support in the record. *Burlington Ditch Reservoir & Land Co. v. Metro Wastewater Reclamation Dist.*, 256 P.3d 645, 660 (Colo. 2011). We review de novo the water court's legal conclusions, including its interpretation of prior decrees. *Id.* at 661.

## III. Analysis

¶21 We hold that the water court erred in concluding that the postponement doctrine does not apply in this case. The water in the borrow ditch south and north of the driveway constitutes the same source of water, irrespective of the driveway. Because the Huffakers and Crowther seek competing rights in the same source of water, the postponement doctrine applies. Under that doctrine, the Huffakers' rights are senior to Crowther's. We further hold that the collection area for the Huffakers' rights starts at the Bagwells' previously decreed point of diversion 3,377 feet south of the intersection of County Road 19 and County Road R. Accordingly, we reverse the judgment of the water court, and remand these cases with directions to revise the applicants' decrees consistent with this opinion.

¶22 A water right is a judicial recognition of the application of water to beneficial use. § 37-92-103(3)(a), (4), C.R.S. (2018). Notably, the applications here involve irrigation tail and waste water. The water court correctly recognized that neither applicant can acquire vested rights in this water because "an appropriator of waste water cannot obtain a right against the water waster to compel continuation of the waste water discharge." *City of Boulder v. Boulder & Left Hand Ditch Co.*, 557 P.2d 1182, 1185 (Colo. 1976). That said, the

12

water court in Division 3 has a longstanding practice of resolving disputes between tail water users even if those rights do not compel continued tail water supply.

¶23 The Huffakers argue that under the postponement doctrine, they are entitled to the senior right in the borrow ditch water because the applicants assert competing claims to the same water and the Huffakers filed their application first. We agree.

¶24 The postponement doctrine governs the administration of water rights adjudicated in different decrees or applied for in different years. *City & Cty. of Denver By & Through Bd. of Water Comm'rs v. City of Englewood*, 826 P.2d 1266, 1275–76 (Colo. 1992). This doctrine was developed by this court and later codified in statute. *See South Adams Cty.*, 812 P.2d at 1163–64; *United States v. Bell*, 724 P.2d 631, 641 n.13 (Colo. 1986).

¶25 Under the postponement doctrine, water rights adjudicated in a previous decree are senior to water rights adjudicated in a subsequent decree on the same stream, regardless of their dates of appropriation. *South Adams Cty.*, 812 P.2d at 1164. Whereas section 148-9-13(3) of the 1943 Adjudication Act applied the doctrine according to the decrees in which the water rights were adjudicated, section 37-92-306 of the Water Right Determination and Administration Act of 1969 applies the doctrine according to the years in which the water rights applications were filed. *City of Englewood*, 826 P.2d at 1276 n.10; *see also* Dennett L. Hutchinson, Comment, *Determining Priority of Federal Reserved Rights*, 48 U. Colo. L. Rev. 547, 554–55 (1977) (clarifying that the emphasis since the 1969 codification of the postponement doctrine is "no longer on general or supplemental adjudications, but rather on filings and determinations during a calendar year, all of which are considered as one 'adjudication'").

13

¶26    Thus, under the 1969 Act, two dates are critical in determining the priority of rights adjudicated on the same source of water:  (i) the date the application was filed, which sets the calendar year the water right was filed and establishes priority over filings in subsequent calendar years, and (ii) the date the first step toward appropriation was taken, which establishes the relative priority of water rights applied for in the same calendar year.  § 37-92-306; *Cty. of Arapahoe*, 891 P.2d at 964; *see also Dallas Creek*, 933 P.2d at 35.  In other words, an applicant who files for a water right in one calendar year takes priority over applicants who file for water rights on the same source of water in subsequent calendar years, regardless of the dates of appropriation.  *City of Englewood*, 826 P.2d at 1276; *South Adams Cty.*, 812 P.2d at 1164.  But among water rights filed in the same calendar year, the applicant who first appropriated the water takes seniority.  § 37-92-306; *see also Concerning Application for Water Rights of Turkey Canon Ranch Ltd. Liab. Co.*, 937 P.2d 739, 749 (Colo. 1997); *Cty. of Arapahoe*, 891 P.2d at 964.

## A. The Postponement Doctrine Applies Here to Entitle the Huffakers to the Senior Water Rights

¶27    We hold that the water court erred in concluding that the driveway blocking the borrow ditch in this case separates the water in the ditch south and north of the driveway into distinct sources such that the postponement doctrine does not apply to determine the priority of the applicants' competing rights to the water in the borrow ditch.  The water court's reliance on *South Adams County*, in particular, was misplaced.

¶28    The issue in *South Adams County* was whether a 1913 decree adjudicating 136 water rights on the North and South Forks of the South Platte River should be treated as

14

an original adjudication such that those water rights should be administered by their appropriation dates as against all other vested rights on the South Platte, or as a supplemental adjudication such that those rights should be deemed junior to a 1889 general adjudication of diversion priorities on the South Fork of the South Platte basin. *South Adams County*, 812 P.2d at 1162–63.

¶29    The water court held that the 1913 adjudication was intended to be an original adjudication for the water rights located on the North Fork and not a supplemental adjudication of the 1889 decree; thus, these water rights should be administered according to their appropriation dates. *Id.* at 1165. This court affirmed, reasoning in part that even if the postponement doctrine existed at the time of the 1913 adjudication, the referee was not required to apply the doctrine to the North Fork water rights because the 1913 decree explicitly stated that the waters of the North Fork and South Fork of the South Platte river "are separated by a high mountain range," such that "there is not, and cannot be any conflict of right" between the users. *Id.* at 1167. In other words, there was no need to apply the doctrine to both the South Fork and North Fork water rights adjudicated in the 1913 decree because they involved "distinct and separate drainage basins." *Id.* at 1166. Indeed, we concluded, it would be improper to treat the 1913 adjudication of North Fork water rights as supplemental to previous adjudications of South Fork water rights. *Id.* at 1167. We further observed that water officials had consistently treated the 1913 adjudication of North Fork rights as an original adjudication and administered those rights based on dates of appropriation. *Id.* at 1168.

¶30 *South Adams County* was foremost a case about construing water court decrees. But in any event, our decision in that case does not support the water court's reasoning here that the driveway intersecting the borrow ditch was functionally analogous to a mountain range or that the water court was required to treat the sections of the borrow ditch on either side of the driveway as separate sources of water.

¶31 The water in the borrow ditch at issue here constitutes the same source for purposes of the postponement doctrine; the driveway does not make a difference. As the water court observed, water routinely flows over this driveway: It "frequently leaves the borrow ditch south of Culvert Number 1 and flows down to the road and back into the borrow ditch, eventually reaching the Huffakers' point of diversion." The sections of the borrow ditch on either side of the driveway—sourced from the same fields—are not comparable to discrete tributaries of a river separated by a mountain range, particularly given that the ditch water routinely overflows the driveway and rejoins the ditch on its northward course.

¶32 Section 37-92-401(b)(I), C.R.S. (2018), which defines water derived from the "same common source" to facilitate water division engineers' tabulation of priorities among water rights, also supports our conclusion that the two sections of the borrow ditch do not constitute separate sources. This provision defines a common source of water as "all . . . waters in a water division, either surface or underground, that if left in their natural state would join together to form a single natural watercourse before exiting the water division." § 37-92-401(b)(I). Even though the man-made driveway here interrupts the

16

flow of water in the borrow ditch, the water south of the driveway eventually "join[s] together to form a single natural watercourse" north of the driveway. *Id.*

¶33 Thus, we conclude that the sections of the borrow ditch on either side of the driveway constitute the same source of water. The postponement doctrine therefore applies to determine the relative priorities of the water rights between the Huffakers and Crowther because they have filed competing applications in the same source of water. Under this doctrine, the Huffakers' rights are senior because they filed their application three calendar years before Crowther. *See City of Englewood*, 826 P.2d at 1276.

## B. The Decrees Must Be Revised

¶34 The water court's decrees in 13CW3012 and 16CW3013 awarded Crowther a conditional right to 7 c.f.s. of water in a collection area south of the driveway and the Huffakers an absolute right to 8 c.f.s. of water in a separate collection area north of the driveway. Our conclusion that the sections of the borrow ditch south and north of the driveway are the same source of water frustrates these terms governing the collection areas, which appear tethered to the water court's erroneous conclusion that the two sections are separate sources. We therefore vacate the water court's decrees in 13CW3012 and 16CW3013 and remand with instructions to enter revised decrees so that the Huffakers' collection area of their absolute water right begins not at the driveway immediately north of Crowther's Culvert Number 1, but farther south (upstream) at the Bagwells' previously decreed point of diversion 3,377 feet south of the intersection of County Road 19 and County Road R—the same collection area as that decreed to Crowther for his Culvert Number 1.

17

## IV. Conclusion

¶35    For the foregoing reasons, we reverse the judgment of the water court and remand these cases with directions to revise the applicants' decrees consistent with this opinion.