1 2021 CO 77 Robert Kint Glover, Gerald Kiefer, Marjorie R. Kiefer Marital Trust, Blair A. Kiefer Family Trust, Jane Raeleen Dunn, Friday LLC, and The Estate of Robert Kint Glover, Plaintiffs-Appellants: and Gregory Cucarola, Appellant: v. Serratoga Falls LLC; Resource Land Holdings LLC; Jesse McDowell; Town of Timnath; Kitchel Lake Development Corporation; Kitchel Lake Partners, LLC; James Righeimer; Lee Lowrey; and Kenneth Mitchell. Defendants-Appellees: No. 20SA278
Supreme Court of Colorado, En Banc
November 15, 2021

 Appeal
 from the District Court Weld County District Court, Water
 Division 1, Case No. 18CW3166 Honorable James F. Hartmann,
 Water Judge

 Attorneys for Plaintiffs-Appellants: Corona Water Law Craig
 V. Corona Basalt, Colorado.

 Kinnear, LLC Kevin J. Kinnear Broomfield, Colorado.

 Attorneys for Appellant: McConnell Van Pelt, LLC Michael T.
 McConnell Robert W. Steinmetz Denver, Colorado.

 Attorneys for Defendants-Appellees Serratoga Falls LLC,
 Resource Land Holdings LLC, and Jesse McDowell: Brownstein
 Hyatt Farber Schreck, LLP Steven O. Sims Hubert A. Farbes,
 Jr. Joshua A. Weiss Denver, Colorado.

 Attorneys for Defendant-Appellee Town of Timnath: Lyons
 Gaddis Kahn Hall Jeffers Dworak & Grant, PC John W.
 Gaddis Jeffrey S. Rose Longmont, Colorado.

 Attorneys for Defendants-Appellees Kitchel Lake Development
 Corporation; Kitchel Lake Partners, LLC; James Righeimer; Lee
 Lowrey; and Kenneth Mitchell: Vahrenwald McMahill Massey and
 Mitchell LLC Allan S. Massey Fort Collins, Colorado.

 OPINION

 HART
 JUSTICE.

 ¶1
This case comes to us after four years of unsuccessful
 negotiation and several years of contentious litigation over
 a dispute that, as the water court put it, could have been a
 "simple, simple" case about the placement of an
 irrigation ditch and maintenance obligations related to that
 ditch. Instead of proceeding as a straightforward
 determination of these issues under the standards we
 established in Roaring Fork Club v. St. Jude's
 Co., 36 P.3d 1229 (Colo. 2001), the case was made
 complex by the plaintiffs' repeated assertions of
 unsubstantiated factual allegations and multiple legal claims
 lacking substantial justification. In the end, after ruling
 against the plaintiffs on the merits, the water court took
 the rare step of awarding attorney fees to the defendants
 because of the "frivolous, vexatious, and
 litigious" nature of many of the plaintiffs' claims.

 ¶2
 On appeal, the plaintiffs argue that the water court, which
 they vigorously asserted did have jurisdiction
 throughout the proceedings at the trial level, actually
 did not have jurisdiction. They further argue that
 the court made numerous errors on the merits of the case. And
 finally they contest the court's award of attorney fees.
Reviewing these arguments, we conclude that (1) the water
 court did have jurisdiction to hear this case, (2) the
 court's conclusions on the merits of the various claims
 were correct, and (3) the court's decision to award
 attorney fees was not an abuse of discretion. Accordingly, we
 affirm the judgment of the water court. We

 also award defendants appellate attorney fees for certain
 arguments pressed in this appeal.

 I.
Facts and Procedural History

 ¶3
 In 2014, Resource Land Holdings LLC and Serratoga Falls
 LLC[1]
 began to develop a new residential real estate project in the
 Town of Timnath ("Timnath"). As part of this
 development, Serratoga sought to negotiate with Robert Glover
 and Gerald Kiefer ("Glover") about how Serratoga
 might replace a concrete-lined, open-air ditch-the
 Kiefer-Glover Lateral ("KG Lateral"), through which
 Glover claimed an easement to access certain water
 rights-with an underground irrigation pipe. Those
 negotiations were unproductive. In May 2018, Serratoga's
 attorneys informed Gregory Cucarola, who represented Glover
 at the time, that they believed the "correct approach to
 take" if the parties could not agree would be for
 Serratoga to seek judicial approval of their proposed
 modification of the KG Lateral through the process approved
 by this court in Roaring Fork, 36 P.3d at
 1231.

 ¶4
 Before Serratoga filed a Roaring Fork ditch
 modification proposal, however, Glover filed his own
 complaint in the water court in October 2018, followed by an

 amended complaint in April 2019. The amended complaint
 asserted seventeen claims arising from Serratoga's
 construction activities. Glover alleged that Serratoga's
 actions during development, including installation of
 subdrains, involvement with sewer and water lines, collapsing
 of a portion of the ditch, and a crossing of the ditch,
 constituted trespasses to his water rights and easement on
 the KG Lateral. He also alleged that Serratoga's
 completed installation of subdrains and proposed move of the
 KG Lateral underground would affect water flows into the
 Paige Brothers Seepage Ditches and Reservoir, [2] resulting in
 additional trespass and nuisance to Kiefer's water
 rights.

 ¶5
 In claims 1, 4, and 5 of the amended complaint, Glover sought
 declaratory judgments or "adjudications" related to
 the scope of Glover's water rights and easements to
 convey those water rights. The other claims were various tort
 claims: trespass, nuisance, malicious conduct, slander of
 title, and civil conspiracy. Glover additionally alleged
 statutory claims, including violations of sections 7-42-109,
 C.R.S. (2021) and 37-89-103, C.R.S. (2021) (both of which
 provide criminal penalties for interference with water
 structures); section 38-35-109(3), C.R.S. (2021)

(prohibiting fraudulent document recording and clouding
 title); and section 38-10-101, C.R.S. (2021) (prohibiting
 fraudulent conveyance).

 ¶6
 Glover stated in his amended complaint that the water court
 had exclusive jurisdiction to address some claims as an
 "adjudication to determine the quality, quantity and
 timing of [Glover's] use of water" and to address
 the rest as "ancillary claims that are interrelated with
 [Glover's] use of water or that directly affect the
 outcome of water matters within the exclusive jurisdiction of
 [the water court]."

 ¶7
 Serratoga subsequently brought counterclaims and filed a
 third-party complaint, adding Timnath as a party. Serratoga
 sought a declaration of the scope of Glover's water
 rights; permission to alter the KG Lateral, to cross the
 Paige Brothers Ditch No. 1, and to move the Prospect Lateral
 Ditch ("Prospect Lateral")[3]pursuant to Roaring
 Fork; and a declaration of the parties' maintenance
 obligations

 associated with each ditch. Serratoga also filed a motion to
 dismiss eight of Glover's claims.

 ¶8
 The Weld County District Court, Water Division 1, granted the
 motion to dismiss for seven of the claims, explaining that,
 as pleaded, the claims were "speculative and devoid of
 any factual support." The water court also granted a
 motion for summary judgment filed by Timnath on the claims
 involving the Prospect Lateral, concluding that Glover could
 not "maintain an action in adverse possession"
 against the town to prevent the borrow ditch from being
 moved. See § 38-41-101(1)-(2), C.R.S. (2021)
(prohibiting easement adverse possession claims against any
 city or county). Finding that Timnath's right of way for
 Prospect Road exists on land owned by Serratoga, the water
 court held that Serratoga-rather than Timnath-was the proper
 party to address Glover's claims for relief regarding the
 Prospect Lateral.

 ¶9
 The water court held a seven-day trial in February 2020 to
 hear the remaining claims. Following Glover's
 case-in-chief, Serratoga moved for dismissal under C.R.C.P.
 41(b)(1). The water court proceeded to dismiss: (1) claims
 related to the Prospect Lateral on the basis that Glover had
 no property interest in the borrow ditch; (2) trespass claims
 to water rights because, despite the brief collapse of the KG
 Lateral, there was no evidence that water "was not
 delivered when it was called for" by Glover; and (3)
 claims of conspiracy, slander

 of title, and malicious conduct as there "just [was] no
 evidence to support any of those allegations." The water
 court maintained only the claims to special damages, and for
 declaratory relief to determine the scope of Glover's
 easement in the KG Lateral and whether Serratoga's plan
 to move the KG Lateral underground would affect water rights
 in the Paige Brothers Reservoir.

 ¶10
 On those remaining claims, the water court issued a verbal
 ruling in favor of Serratoga at the conclusion of trial.
Applying Roaring Fork, the water court held that
 Serratoga's proposed underground pipeline would not
 significantly lessen the utility of the easement on the KG
 Lateral, increase the burdens on Glover, or frustrate the
 purpose of the easement. See Roaring Fork, 36 P.3d
 at 1231. In fact, the water court found that the easement
 would be "enhanced" (widened) by Serratoga's
 proposed change and the "pipe [would] deliver more water
 than was historically delivered to [Glover]." Therefore,
 the water court approved Serratoga's proposal to alter
 Glover's KG Lateral easement to construct the underground
 pipeline and held that the obligation to maintain the
 pipeline as an easement for Glover fell on Serratoga.

 ¶11
 The water court also found Glover and attorney Cucarola
 jointly and severally liable for attorney fees for the claims
 that were dismissed, stating:

I can count on one hand with fingers left over how many times
 I've done this in the 17 years I've been a judge. But
 I think this is a case that warrants such action. Defendants
 were called upon to spend

 time and money on claims that lacked substantial
 justification and were frivolous, vexatious, and litigious.

In response to a question about the timing of a hearing on
 the amount of attorney fees, the water court noted that,
 although the Statewide Practice Standards in C.R.C.P. 121,
 section 1-22 give a party seeking attorney fees twenty-one
 days to serve a motion requesting those fees, he would give
 Serratoga thirty days to file that motion, with fourteen days
 for Glover and Cucarola to file a response and to request a
 hearing. The court noted that "[t]here would not need to
 be a reply if there's a request for a hearing on
 reasonableness because-we'll set a hearing."

 ¶12
 Following these rulings, Glover, now represented by Craig
 Corona, filed two post-trial motions for relief-a C.R.C.P. 59
 motion and a C.R.C.P. 60 motion. In the Rule 59 motion,
 Glover asked the water court to make further findings
 relating to the trespass claims, clarify findings relating to
 the award of attorney fees, and amend the award of attorney
 fees to account for Cucarola being responsible for bringing
 the claims the court found lacked substantial justification.
Citing its "detailed findings" at trial, the water
 court declined to make further findings and denied the
 request to modify the findings of joint and several liability
 for the award of attorney fees.

 ¶13
 In the Rule 60 motion, Glover asserted for the first time
 that the water court lacked subject matter jurisdiction
 because none of the claims involved "water
 matters," and, therefore, the water court's judgment
 should be voided. The water

court held that claims 1, 4, and 5 all involved "water
 matters" on the basis that "the findings and
 declarations requested by plaintiffs related to their right
 to use water, rather than findings as to the ownership of the
 water rights." See In re Tonko, 154 P.3d 397,
 404 (Colo. 2007) ("Water matters involve determinations
 regarding the right to use water, the quantification of a
 water right, or a change in a previously decreed water
 right."). Further, the water court held that "it
 was proper for the water court to exercise ancillary
 jurisdiction over plaintiffs' other claims" because
 they were "inextricably intertwined" with claims 1,
 4, and 5. Thus, the water court denied the Rule 60 motion.

 ¶14
 Separately, Cucarola filed a Rule 59 motion for post-trial
 relief, asking the water court to vacate the findings that
 certain claims lacked substantial justification, reverse the
 award of attorney fees as joint and several, and provide him
 the opportunity to submit written briefing and have an
 evidentiary hearing on the apportionment of the award. He
 argued, in part, that the water court failed to make
 sufficient, specific findings pursuant to section 13-17-102,
 C.R.S. (2021)-instead giving only a "sweeping
 determination that claims 'lacked substantial
 justification and were frivolous, vexatious, and
 litigious.'" The water court denied the motion as
 "Cucarola and [Glover] had ample opportunities to back
 away from the claims that they knew or should have known
 lacked substantial justification. Their failure to do so
 resulted in [Serratoga] incurring

 great time and expense defending claims that never should
 have been pursued." Further, the water court noted that
 the question of the amount of attorney fees and
 "apportionment of the payment" would be addressed
 during subsequent hearings during which both Cucarola and his
 former clients could present arguments in response to
 Serratoga's specific fee requests.

 ¶15
 Glover and Cucarola appealed the water court's judgment
 directly to this court.[4] Glover contests the water court's
 subject matter jurisdiction over the action on three grounds.
First, he contends that the case does not present any water
 matter that would grant the water court subject matter
 jurisdiction. Second, he contends that the water court lacked
 ancillary jurisdiction over any non-water matters, either
 because the water court lacked subject matter jurisdiction as
 a whole or because the ancillary matters were not
 sufficiently related to the water matters to grant
 jurisdiction. Third, Glover contends that the water court
 erred in proceeding without publication of a resume notice.
In the alternative, Glover argues that the water court
 committed multiple legal errors on the merits. Finally,
 Glover argues that the court abused its discretion in
 awarding attorney fees.

 II.
Analysis

 ¶16
We first consider the three proffered grounds for contesting
 the water court's subject matter jurisdiction: the
 existence of water matters, appropriateness of ancillary
 jurisdiction, and absence of resume notice. We conclude that
 the water court had proper subject matter jurisdiction as
 Glover presented water matters in the complaint, the
 non-water matters were sufficiently related to those water
 matters to warrant ancillary jurisdiction, and the
 circumstances of this dispute did not require publication of
 a resume notice. We then turn to the water court's
 conclusions on the merits of the case, including those
 findings regarding the award of attorney fees. Finding no
 errors or abuse of discretion in the water court's
 rulings on the merits, we affirm the order. Finally, we
 conclude that Serratoga is entitled to appellate attorney
 fees for certain arguments pressed in this appeal.

 A.
The Water Court Had Subject Matter Jurisdiction

 ¶17
 Water courts "retain exclusive jurisdiction over all
 water matters." Kobobel v. Colo. Dept. of Nat.
 Res., 249 P.3d 1127, 1132 (Colo. 2011) (quoting In
 re Tonko, 154 P.3d at 404); see §
 37-92-203(1), C.R.S. (2021). Whether a claim constitutes a
 water matter turns on the distinction between "actions
 involving the use of water and those involving the
 ownership of a water right." Kobobel,
 249 P.3d at 1132 (emphases added); see also In re
 Tonko, 154 P.3d at 404 (explaining this distinction).
Water matters involve the use of water, including
 "applications for

 initial decrees and for decrees approving augmentation plans,
 applications for changes of decreed water rights, and matters
 concerning the scope of previously decreed water rights and
 the abandonment, laches, and adverse possession of water
 rights." Allen v. State, 2019 CO 6, ¶ 10,
 433 P.3d 581, 584; see also S. Ute Indian Tribe v. King
 Consol. Ditch Co., 250 P.3d 1226, 1234 (Colo. 2011)
("Water courts are authorized to construe and make
 determinations regarding the scope of water rights
 adjudicated in prior decrees."); Kobobel, 249
 P.3d at 1132 (holding that a determination of the "scope
 of [a] right to use [] decreed water rights" constituted
 a water matter); In re Tonko, 154 P.3d at 404
(holding that "[a]pplications for a change of decreed
 water rights" are water matters); Crystal Lakes
 Water & Sewer Ass'n v. Backlund, 908 P.2d 534,
 536 (Colo. 1996) (holding that whether a party is subject to
 the terms of an augmentation plan is a water matter).
Conversely, issues involving ownership of a water right,
 which frequently arise "in conjunction with the
 conveyance of property and other rights," do not
 constitute water matters; they fall under the general
 jurisdiction of district courts. Humphrey v. Sw. Dev.
 Co., 734 P.2d 637, 641 (Colo. 1987) (finding that an
 ownership dispute occurred where "the district court was
 required to analyze deeds, contracts, and other documents
 that established the chain of title to certain decreed water
 rights"); see also Allen, ¶ 11, 433 P.3d
 at 584 (giving examples of actions involving the ownership of
 a

 water right, including "quiet title proceedings, real
 estate matters, dissolution proceedings, and other civil
 actions in the district courts").

 ¶18
 Claims 1, 4, and 5 of the amended complaint present water
 matters because their resolution required determinations
 regarding the scope of the right to use water-rather
 than ownership of the right.[5] Glover contends that,
 despite the fact that he brought the original action in water
 court, none of the claims in the complaint constitutes a
 water matter because the claims actually asked for a
 determination of ownership of water specifically in the
 Roaring Fork context. He argues that finding
 otherwise would require every ditch modification case brought
 under Roaring Fork to be heard in water court. We
 disagree.

 ¶19
 In Roaring Fork, we held that when the owner of a
 ditch burdened by an easement seeks to move or alter the
 ditch, the "water provided to the ditch easement owner
 must be of the same quantity, quality, and timing as provided

 under the ditch owner's water rights and easement rights
 in the ditch." 36 P.3d at 1238. A district court may
 properly construe the quantity, quality, and timing of water
 delivery to the easement owner when there are records clearly
 establishing these facts-as was the case in Roaring
 Fork itself. However, when a Roaring Fork
 dispute requires initial determinations as to the scope of a
 decreed water right or any other water matters as a precursor
 to ensuring that the same quantity, quality, and timing is
 provided, then the dispute falls within the exclusive
 jurisdiction of the water court.

 ¶20
 Here, the parties disagreed over the total flow of water any
 modified KG Lateral needed to carry. Before resolving the
 Roaring Fork dispute over location and maintenance
 of the ditch, the water court first had to determine the
 exact scope of decreed water rights in the KG Lateral and
 Paige Brothers Seepage Ditches and Reservoir-i.e.,
 Glover's right to use water. This involved the water
 court deciding numerous right-of-use issues, such as
 "whether seepage water should be classified as return
 flows that [Glover] . . . ha[s] the continued right to rely
 upon under the Paige Brothers Reservoir decree" and
 whether Glover has the right to use free river flows. Thus,
 because claims 1, 4, and 5 required the resolution of water
 matters as initial determinations preceding the Roaring
 Fork analysis, they came within the exclusive
 jurisdiction of the water court.

 B.
Ancillary Jurisdiction Over Non-Water Claims Was
 Appropriate

 ¶21
 Having established the water court's exclusive
 jurisdiction over claims 1, 4, and 5 as water matters, we
 next address whether this jurisdiction extended to the
 non-water claims as ancillary issues.

 ¶22
 Ancillary jurisdiction over non-water matters exists in
 Colorado water courts where the ancillary claims are
 "interrelated with the use of water or . . . directly
 affect the outcome of water matters within the exclusive
 jurisdiction of the water court." Kobobel, 249
 P.3d at 1132; see also Crystal Lakes, 908 P.2d at
 541-42. We have previously stressed that the purpose of
 ancillary jurisdiction is judicial efficiency. In Crystal
 Lakes, we explained that requiring rulings in two
 different actions to "bring about [a just and final]
 result" approaches absurdity. 908 P.2d at 543-44
(alteration in original) (quoting Perdue v. Fort Lyon
 Canal Co., 519 P.2d 954, 956) (Colo. 1974)). Thus,
 "[a]s a general rule, '[o]nce a court takes
 jurisdiction of an action, it thereafter has exclusive
 jurisdiction of the subjects and matters ancillary
 thereto.'" Id. at 543 (second alteration in
 original) (quoting People in Int. of Maddox v. Dist.
 Court ex rel. Arapahoe Cty., 597 P.2d 573, 575 (Colo.
1979).

 ¶23
 Consistent with this efficiency rationale, ancillary
 jurisdiction does not extend to real property issues
 "only tangentially involv[ing] water matters."
FWS Land & Cattle Co. v. Colo. Div. of Wildlife,
 795 P.2d 837, 841 (Colo. 1990) (holding that a water court
 does not have ancillary jurisdiction to determine a right to
 use

lands underlying a reservoir in contrast to a right
 to use water). It also does not extend to non-water
 matters where the water court dismisses the water matters
 prior to trial. See Sheek v. Brooks, 2019 CO 32M,
 ¶¶ 20-23, 440 P.3d 1145, 1149 (holding that the
 water court lacked ancillary jurisdiction over additional
 claims of trespass or theft where the water matters were
 dismissed prior to trial).

 ¶24
 Here, where the water court exercised jurisdiction over water
 matters essential to the Roaring Fork analysis at
 trial, it properly exercised ancillary jurisdiction over the
 remaining interrelated tort and statutory claims. Finding
 otherwise in this case would produce precisely the absurd
 result that we warned against in Crystal Lakes, 908
 P.2d at 543-44. It would require parties with claims that
 involve the resolution of underlying water matters to first
 litigate those matters in the water court and then proceed to
 district court for litigation on the same facts and
 significantly related issues. Therefore, we conclude that the
 water court had subject matter jurisdiction not only to
 determine the water matters but also to resolve the ancillary
 tort and statutory claims interrelated with those matters.

 C.
Publication of a Resume Notice Was Not Required

 ¶25
 The final ground for Glover's contest of the water
 court's subject matter jurisdiction is the lack of
 publication of a resume notice.

 ¶26
 Glover raised the issue of publication of a resume notice for
 the first time on appeal. "Generally, 'issues not
 raised in or decided by a lower court will not be addressed
 for the first time on appeal.'" United Water
 & Sanitation Dist. ex rel. United Water Acquisition
 Project Water Activity Enter. v. Burlington Ditch Reservoir
 & Land Co., 2020 CO 80, ¶ 37, 476 P.3d 341, 350
(quoting Melat, Pressman & Higbie, L.L.P. v. Hannon
 Law Firm, 2012 CO 61, ¶ 18, 287 P.3d 842, 947). We
 could disregard the argument on this basis alone. However, we
 will briefly address the merits of the claim, as it relates
 to our ruling on the award of appellate attorney fees.

 ¶27
 Colorado law requires "resume notice"-publication
 of a notice in a generally circulated newspaper-for water
 right adjudications as special statutory proceedings.
See § 37-92-302(3); C.R.C.P. 90;
Sheek, ¶ 13, 440 P.3d at 1148. However, in
 King Consol. Ditch Co., this court held that there
 are "limited circumstances" where personal service,
 rather than resume notice, is appropriate. 250 P.3d at 1235.
These circumstances include "declaratory judgment
 actions where relief is sought against a named party, as
 opposed to an application affecting all water rights on a
 stream system." Id. We explained that personal
 service is appropriate because "[t]hese actions focus on
 specific disputes among and between specific water
 users." Id.

 ¶28
 This dispute-a specific dispute between Glover and Serratoga
 as named parties-is precisely the type of water matter for
 which personal service is appropriate, rather than resume
 notice. The lack of resume notice does not affect the water
 court's jurisdiction.

 D.
The Water
Court's Rulings
Were Correct
on the
Merits

 ¶29
 Turning to the merits, we find no errors in the water
 court's conclusions for the reasons stated below.

 1.
The Water Court Correctly Dismissed the Trespass Claim
 Because Serratoga Did Not Unilaterally Alter the KG
 Lateral

 ¶30
We first consider whether the water court erred in applying
 Roaring Fork when it dismissed Glover's claim
 for trespass on the KG Lateral easement.

 ¶31
 In Roaring Fork, this court considered whether the
 burdened estate owner "had the right to move the
 ditch" without consent. 36 P.3d at 1232. The burdened
 estate owner in Roaring Fork was a club
 "[s]eeking to alter the ditch course in order to
 accommodate its golf and fishing development."
Id. at 1230. The club went ahead with construction
 to move the ditch, including activities such as excavating
 within the easement, grading and destroying ditch banks,
 realigning ditch channels, diverting water flows, and piping
 portions of the ditches. Id. We disapproved of these
 actions occurring without consent, which we called a
 "self-help approach." Id. at 1239.
Reviewing the trial court's decision that the club

 committed trespass on the ditch easement, we agreed that a
 trespass occurred when the ditch easement was unilaterally
 altered because such an action went against the common law
 principle that "ditch easements are a property right
 that the burdened estate owner may not alter absent consent
 of the benefitted owner." Id. at 1234.
Therefore, we held that:

the owner of [the burdened estate] may not move or alter that
 easement unless that owner has the consent of the owner of
 the [benefitted estate]; OR unless that owner first obtains a
 declaratory determination from a court that the proposed
 changes will not significantly lessen the utility of the
 easement, increase the burdens on the owner of the easement,
 or frustrate the purpose for which the easement was created.

Id. at 1231.

 ¶32
 In the present case, unlike in Roaring Fork, there
 was ultimately no movement or alteration to the ditch
 easement. Both parties agree that damage occurred to the
 physical infrastructure of the KG Lateral while Serratoga
 undertook construction work on its adjacent property-such as
 damages that "caused [the] concrete portion [of the
 ditch] to collapse" and "an issue with the pipe
 that leads from the concrete portion of the ditch over to the
 pipe that leads under Prospect Road." But the parties
 disagree on the nature of this damage and its source. Glover
 asserted repeatedly during the litigation that this damage
 was intentional and that it was a species of
 "self-help" intended to move or alter the ditch
 easement. Serratoga responded either by denying that it
 caused the damage

 or by noting that any damage was accidental and could not be
 characterized as a self-help effort designed to alter or move
 the easement without consent. And in each instance, Serratoga
 promptly repaired any damages without moving or altering the
 ditch.

 ¶33
 Ultimately, the water court found no evidence of
 "self-help" in these incidents and noted that the
 "ditch was repaired in its existing location
 with concrete to the same capacity and
 dimensions" to remedy the physical damage
 temporarily caused by the construction. (Emphases added.) We
 agree there cannot be a Roaring Fork trespass
 without evidence of an actual movement or alteration;
 accidental damage and repair is not movement or alteration
 within the meaning of Roaring Fork.

 ¶34
 The water court also found that Serratoga properly came to
 the court, through their counterclaim, to propose altering
 the easement from an open-air ditch to an underground
 pipeline after they tried to "work it out and
 agree" but failed to gain Glover's consent. In its
 judgment, the water court stated: "The Defendants
 didn't use self-help. I asked that question specifically.
Did you attempt to pipe this lateral without permission? And
 the answer was, 'No.' There was no self-help
 regarding the conveyance structure." Contrasting these
 findings to those in Roaring Fork, we agree that
 Serratoga properly proposed its anticipated unilateral
 alteration to the ditch in its counterclaim without pursuing
 self-help.

 ¶35
 Importantly, the existence of a non-exclusive, prescriptive
 easement does not prevent the burdened property owner from
 using the property altogether. See City of Aurora v. ACJ
 P'ship, 209 P.3d 1076, 1086 (Colo. 2009). We have
 previously explained that the owner of the servient estate
 retains "the right to use the non-exclusive easement for
 purposes that are consistent with the rights of the easement
 holder and that do not unreasonably interfere with the
 dominant estate." Id.; see also Lazy Dog
 Ranch v. Telluray Ranch Corp., 965 P.2d 1229, 1238
(Colo. 1998). Thus, while Glover enjoys a
 "non-exclusive, prescriptive easement" to
 "access, maintain, operate, and receive water rights
 from the KG Lateral," Serratoga retains the right to
 develop their adjacent property in a manner that does not
 unreasonably interfere with the easement. The water court
 concluded that Serratoga's prompt repair of the damages
 that occurred on the ditch during the course of their
 development of adjacent property did not unreasonably
 interfere with Glover's easement. We see nothing to
 warrant upsetting that conclusion.

 ¶36
 Therefore, the water court did not err in dismissing the
 claim for trespass on the KG Lateral easement.

 2.
The Water Court Properly Dismissed Kiefer's Claims to a
 Prospect Lateral Easement

 ¶37
We next review whether the water court erred when it
 dismissed Kiefer's claims to a Prospect Lateral
 easement.[6]

 ¶38
 An individual cannot acquire title, interest, or right of
 "any land, water, water right, easement or other
 property whatsoever" by possession-"no matter how
 long continued"-against the State of Colorado or any of
 its cities or municipalities. § 38-41-101(2). Once a
 dedication of a right of way to a city occurs, a defendant no
 longer can claim a property interest in that same right of
 way. See City of Canon City v. Cingoranelli, 740
 P.2d 546, 547 (Colo.App. 1987) (holding that the defendant
 had no adverse possession claim to a strip of land against
 Canon City where the City had accepted a dedication to a
 right of way that included the strip).

 ¶39
 Here, the water court found that Timnath (with Larimer County
 as its predecessor) established a right of way for Prospect
 Road through a properly recorded dedication in 1889 that
 included the Prospect Lateral as a borrow ditch to be created
 at the time of construction of the public highway. Kiefer,
 meanwhile,

 began conveying water down the Prospect Lateral in the 1970s.
Kiefer argues that these conveyances created a property
 right-a ditch easement-in the Prospect Lateral. But Kiefer
 cannot establish an easement through a claim against Timnath
 regardless of whether the easement is established by adverse
 possession, prescriptive easement, or irrevocable license.
See § 38-41-101(2); see In re Tonko,
 154 P.3d at 404 (explaining that a ditch easement may
 "be established as a prescriptive easement, an easement
 by estoppel, an easement from prior use, or an irrevocable
 license"). Thus, the water court properly dismissed
 Kiefer's claims to a Prospect Lateral easement.

 3.
The Water
Court Properly
Declared the Parties' Rights and
 Duties in the Easements

 ¶40
We now turn to whether Glover is correct in his assertion
 that the water court failed to declare all of the
 parties' rights and duties as to the Prospect Lateral, KG
 Lateral, and Paige Brothers Seepage Ditch.

 ¶41
This court has previously held that the purpose of a
 declaratory judgment is "to afford relief from
 uncertainty and insecurity." Colo. State Bd. of
 Optometric Exam'rs v. Dixon, 440 P.2d 287, 289
(Colo. 1968). The water court, through its final judgment and
 orders on multiple motions, made detailed findings as to the
 rights and duties of each of the parties with regard to the
 easements. Thus, Glover's contention that the court did
 not declare the parties' rights is simply incorrect.

 ¶42
 First, as discussed above, Kiefer has no rights or duties
 regarding the Prospect Lateral borrow ditch. The water court
 determined, and this court affirms, that there is no basis on
 which Kiefer may claim a right in the ditch. The water court
 further detailed that Timnath and Serratoga have no duty to
 place a structure on the Prospect Lateral for Kiefer "to
 continue his practice" of diverting water in that ditch.

 ¶43
 Second, the water court gave a detailed analysis of the
 rights and duties related to the KG Lateral in its judgment
 and post-trial order. In its judgment, the water court
 authorized Serratoga to modify the KG Lateral-changing it
 from an open-air, concrete-lined ditch to a piped ditch-and
 explained that Serratoga has "the obligation to maintain
 that as an easement in favor of [Glover]." Then, in
 response to Glover's Rule 59 motion requesting specific
 findings regarding the easements, the water court gave a
 succinct summary of the rights and duties related to the KG
 Lateral, stating that "the width of the KG Lateral
 easement across [Serratoga's] property is 50 feet"
 and the "responsibilities and costs of construction and
 maintenance of the piped section of the KG Lateral falls
 exclusively on [Serratoga]." Further, it explained that
 the easement entitles Glover to "continued delivery of
 their water through this pipeline in the same quantity,
 quality, and timing as [they] have historically been entitled
 to under their water rights." Finally, the court put the
 responsibility of "maintaining the open portions of the

 ditch" on Glover, "absent an operating agreement
 between the parties in the future establishing a different
 arrangement." Through these findings, the water court
 thoroughly explained the parties' rights and duties in
 the KG Lateral.

 ¶44
 Finally, the water court addressed the rights and duties
 related to the Paige Brothers Seepage Ditches and
 Reservoir-again in its judgment and its post-trial order
 denying Glover's Rule 59 motion. It detailed rights
 "from 1911" that "involve the accumulation of
 tail waters from irrigation seepage" flowing into the
 Paige Brothers Reservoir and stated that Serratoga
 "committed to retaining the Paige Brothers Ditch in its
 present condition," although "little to no
 maintenance . . . has occurred historically." It also
 found that Serratoga showed "the footprint of the Paige
 [Brothers Ditch] will remain," that "the Paige
 Number 1 will remain," and "that water will
 continue to be delivered after the development occurs."

 ¶45
 Overall, these findings-among others-offer ample certainty
 and security for the involved parties, and this court
 therefore concludes that Glover's assertion that the
 water court failed to declare the parties' interests in
 the easements is without merit.

 E.
The Water
Court's Award of
Attorney Fees
Was Not an Abuse of
 Discretion

 ¶46
 At the close of the week-long trial, the water court
 announced that it would grant Serratoga's request for
 attorney fees because Glover's litigation strategy

 forced Serratoga "to spend time and money on claims that
 lacked substantial justification and were frivolous,
 vexatious, and litigious."

 ¶47
 On appeal, Glover and Cucarola raise several issues related
 to the award of attorney fees, namely whether the water court
 erred in finding that certain claims lacked substantial
 justification and whether the court violated Cucarola's
 due process rights by awarding fees without briefing and a
 hearing. We address these concerns in turn.

 ¶48
 In authorizing the award of attorney fees, the legislature
 recognized that increased civil litigation "strain[s]
 the judicial system and interfer[es] with the effective
 administration of civil justice." § 13-17-101,
 C.R.S. (2021). Awarding fees is a tool the court can use to
 reduce the number of "substantially frivolous,
 substantially groundless, or substantially vexatious"
 claims and alleviate this strain. Id. To accomplish
 this aim, a court "shall assess attorney fees if . . .
 it finds that an attorney or party brought or defended an
 action . . . that lacked substantial justification."
§ 13-17-102(4), C.R.S. (2021). An action lacks
 "substantial justification" if it is
 "substantially frivolous, substantially groundless, or
 substantially vexatious." Id.

 ¶49
We review the decision to award attorney fees for abuse of
 discretion. Anderson v. Pursell, 244 P.3d 1188, 1193
(Colo. 2010). Under an abuse of discretion standard, we will
 not disturb an award if it is supported by the record.
See Front Range Res., LLC v. Colo. Ground Water
 Comm'n,

2018 CO 25, ¶ 40, 415 P.3d 807, 815 (finding no abuse of
 discretion where the district court denied attorney fees due
 to the presence of complex issues); Upper Black Squirrel
 Creek Ground Water Mgmt. Dist. v. Cherokee Metro.
 Dist., 2015 CO 47, ¶¶ 25-26, 351 P.3d 408, 415
(finding that a water court did not abuse its discretion
 where the order of costs and attorney fees had evidentiary
 support in the record).

 a.
 The Water Court Did Not Abuse its Discretion When it
 Determined that the Trespass Claim Lacked Substantial
 Justification

 ¶50
 Applying this standard, we consider whether the water court
 abused its discretion when it found that Glover's claim
 for trespass on the easement lacked substantial
 justification. We find no abuse of discretion.

 ¶51
 Glover argues that the court erroneously imposed a
 requirement that a Roaring Fork trespass cause
 damage by allowing Serratoga to avoid liability because it
 fixed the ditch after it was damaged. This argument
 misunderstands the water court's conclusions. The water
 court carefully considered the various damages to and repairs
 of the physical infrastructure of the KG Lateral during the
 time that the parties were negotiating and Serratoga was
 developing its land adjacent to the easement. The court
 ultimately dismissed Glover's ditch-related trespass
 claim after Glover completed his presentation of evidence
 because it concluded: first that these events did not amount
 to a unilateral movement or

 alteration of the ditch without consent under Roaring
 Fork; and second that they did not unreasonably
 interfere with Glover's easement rights. To the extent
 that it considered whether an unreasonable interference with
 Glover's easement occurred, the analysis was not at the
 expense of or in conflict with its Roaring Fork
 analysis.

 ¶52
 Further, the water court properly applied Roaring
 Fork. While evidence of damage is not required to prove
 trespass under Roaring Fork, 36 P.3d at 1234, such a
 claim does require evidence of a unilateral alteration. The
 water court correctly recognized that unintentional damage to
 the structure of the KG Lateral followed by repairs and
 successful water deliveries after those repairs does not
 equate to a unilateral alteration of the ditch easement. And,
 as previously described, when negotiations between the
 parties broke down, Serratoga recognized that it would need
 to come to the water court to propose an alteration to the
 ditch easement under Roaring Fork because it could
 not make a unilateral alteration. The fact that Glover made
 it to the courthouse first does not diminish the
 reasonableness of the water court's determination that
 Serratoga, through its counterclaim, properly came to the
 court as required by Roaring Fork and that
 activities occurring before that proposal were not unilateral
 alterations executed through self-help.

 ¶53
 Hence, there is ample support in the record for the water
 court's determination that the trespass claims lacked
 substantial justification. We therefore find no abuse of
 discretion.

 b.
 The Water Court Did Not Abuse its Discretion in Finding a
 Lack of Substantial Justification for the Additional
 Claims

 ¶54
 Glover and Cucarola also contend that the water court erred
 in its award of attorney fees for several additional
 claims-nuisance, slander of title, acting intentionally with
 malice, violation of two criminal statutes, fraudulent
 conveyance, and civil conspiracy. We find no abuse of
 discretion for the award of fees on any of these claims.

 ¶55
 Cucarola argues that the water court erred in awarding fees
 for the trespass- to-water-right claim by misapplying the law
 and ignoring evidence regarding the installation of
 subdrains. He argues, essentially, that even if Kiefer was
 receiving all the water to which he was entitled from the
 Paige Brothers Reservoir, evidence that the subdrains were
 also drawing water should be sufficient to prove trespass to
 a water right. The water court correctly rejected this
 argument.

 ¶56
 The water court determined that the property right at issue
 in the trespass- to-water-right claim is the "right to
 one fill of [Paige Brothers Reservoir] each year during the
 irrigation season." Thus, Serratoga's activities
 "may not interfere with the filling of the Paige
 Brothers Reservoir." At multiple points during the

 litigation, including in the context of hearing evidence
 about the installation of the subdrains, the water court
 acknowledged this water right. But the water court also
 concluded that there was no evidence that any groundwater
 diverted through the subdrains caused an injury to that water
 right. In fact, the water court found that the Paige Brothers
 Reservoir "continued to fill to capacity to the point of
 spilling through the outlet structure after the
 installation of subdrains." (Emphasis added.)
Therefore, the court reasonably concluded that the
 trespass-to-water-right claim lacked substantial
 justification.

 ¶57
 Cucarola further contends that the water court erred in
 finding that the nuisance claim related to the subdrains
 lacked substantial justification. "A claim for nuisance
 is predicated upon a substantial invasion of an
 individual's interest in the use and enjoyment of his
 property." Hoery v. United States, 64 P.3d 214,
 218 (Colo. 2003). Again, the property at issue here is the
 Paige Brothers water right- the right to a single fill of the
 Paige Brothers Reservoir each irrigation season. The water
 court found that there was no evidence of a substantial
 invasion to the use and enjoyment of the Paige Brothers water
 right as there was no injury to the water right from the
 installation of the subdrains. These findings support the
 water court's determination that the nuisance claim
 lacked substantial justification.

 ¶58
 Glover also argues that fees should not have been awarded for
 the claim that Serratoga was "acting intentionally with
 malice" because the water court

 dismissed it early in the litigation pursuant to C.R.C.P.
 12(b)(5). In its order granting a motion to dismiss on this
 claim, the water court explained that Glover failed "to
 provide any facts to show that [Serratoga] acted
 intentionally and with malice." Without any facts to
 support the claim-particularly when it was dismissed under
 Rule 12(b)-the water court acted within its discretion in
 finding that it lacked substantial justification.
See § 13-17-201, C.R.S. (2021) (mandating
 attorney fees for tort actions "dismissed on motion of
 the defendant prior to trial under rule 12(b) of the Colorado
 rules of civil procedure"); Crandall v. City of
 Denver, 238 P.3d 659, 665 (Colo. 2010) (holding that an
 award of attorney fees is mandatory without exception for a
 "plaintiff's tort action . . . dismissed pre-trial
 on a C.R.C.P. 12(b) motion to dismiss").

 ¶59
 For the claims related to two criminal statutes, section
 7-42-109 (providing a criminal penalty for malicious or
 willful damage to a ditch) and section 37-89-103 (providing a
 criminal penalty for interference with a ditch), Glover and
 Cucarola argue that they were making a good faith argument
 for the extension of these criminal statutes into the civil
 realm. True, section 13-17-102(7), C.R.S. (2021), prohibits
 an award of attorney fees for a claim asserted "in a
 good faith attempt to establish a new theory of law in
 Colorado," but the water court did not abuse its
 discretion in awarding attorney fees for the claim advanced
 here. In defense of the decision to plead the claimed
 criminal violations, Glover stated that the

 statutes were used "to show the Legislative intent and
 public policy that [Glover] obtain restitution in full, and
 that [his] property rights be vindicated." Based on this
 description, the water court acted within its discretion when
 it concluded that this was not a good faith attempt to
 establish a new theory of law. Am. Telev. &
 Commc'ns Corp. v. Manning, 651 P.2d 440, 447
(Colo.App. 1982) (warning against using a criminal statute
"to buttress . . . common law claims").

 ¶60
 Finally, Glover contends that a slander of title claim was
 not pursued through trial and, thus, should not be included
 in the award of attorney fees. He points to our decision in
 Anderson where we held that no attorney fees should
 be awarded for a claim that was abandoned before an opening
 brief was ever filed. 244 P.3d at 1198. Glover is correct
 that the specific claim for slander of title was withdrawn.
However, we note that the amended complaint still included,
 and Glover pursued as claim 12, clouded title and fraudulent
 document recording under section 38-35-109(3), C.R.S. (2021),
 and derivative civil conspiracy claims. These claims were
 essentially just a restyling of the original slander of title
 claim. Indeed, apart from removing the words "slander of
 title" from the heading for claim 12, the paragraphs
 setting forth the allegations were identical to those in the
 previous complaint; the only thing that changed was the
 header. And even after the water court entered summary
 judgment in favor of Serratoga on the section 38-35-109(3)
 claims and found that there was no cause of action under the
 statute

 because Glover was "not the owner[] of the real property
 that is subject of the recorded document," Glover
 continued to argue about the applicability of the statute.
Further, in his arguments opposing Serratoga's Rule 41
 motion, Cucarola maintained the argument that Serratoga's
 actions "clouded" the Glover property. The record
 reflects that the water court addressed Glover's averment
 and found that there "wasn't an intent by
 [Serratoga] to try and cloud the title to the easement.
[They] always knew there was going to be an
 easement. Always. It's just a question of how
 that would look." (Emphases added.) Similarly, the water
 court found "no evidence" to support the
 allegations that Serratoga "hid[] the ball and
 conspir[ed]" to "convey property
 fraudulently." Thus, we find adequate support in the
 record for the water court's finding that the claims of
 clouded title (also referred to as slander of title),
 fraudulent document recording, fraudulent conveyance, and
 derivative civil conspiracy lacked substantial justification.
The court did not abuse its discretion in awarding fees for
 those title-related statutory and tort claims.

 ¶61
 Cucarola additionally asserts that the pursuit of the
 dismissed claims was objectively meritorious as he litigated
 an inevitable lawsuit in good faith reliance on his clients,
 retained experts, and co-counsel. Cucarola contends that
 assessing fees against him but not co-counsel Craig Corona
 was an abuse of the water court's discretion.

 ¶62
We do not agree with this characterization of the lawsuit
 brought by Glover as inevitable. The Roaring Fork
 analysis to assess whether to move the KG Lateral underground
 seemed inevitable based on deteriorated communications
 between the parties. As the water court put it, this could
 have been a "simple, simple" case with a
 determination of the proposed Roaring Fork easement
 modification that Serratoga indicated it would need to
 bring-and subsequently did bring in the counterclaim-unless
 negotiations led to an agreement. What was not inevitable was
 the litany of unsubstantiated claims brought by Glover. Thus,
 we find record support for the water court's fee
 determination that the dismissed tort claims lacked
 substantial justification.

 ¶63
 Finally, the record supports the court's conclusion that
 the unsubstantiated allegations and unfounded assertions of
 malicious and tortious behavior on the part of Serratoga
 originated under Cucarola's counsel. Corona entered his
 appearance on November 11, 2019, well after the original and
 the first amended complaint were filed. And his role at trial
 differed from that of Cucarola. Recognizing that the water
 court "is in the best position to observe the course of
 the litigation" and make an attorney fees determination,
 we find no abuse of discretion here. Anderson, 244
 P.3d at 1194; see also Archer v. Farmer Bros. Co.,
 90 P.3d 228, 231 (Colo. 2004) (explaining that a trial court
 is given broad discretion

 to determine who is a prevailing party in the context of a
 fee award because of its "unique opportunity to observe
 the course of litigation").

 ¶64
 In sum, the water court acted within its discretion in
 finding that Glover's dismissed claims lacked substantial
 justification and therefore warranted an award of attorney
 fees.

 c.
 Cucarola Was Not Denied Due Process

 ¶65
 Cucarola separately asserts that his due process rights were
 violated in the award of attorney fees because the water
 court failed to make requisite findings pursuant to statute
 in imposing fees and failed to accept written briefing and
 hold a separate hearing. There is no basis for this claim.

 ¶66
 First, Cucarola asserts that section 13-17-103(1), C.R.S.
(2021), required the court to set forth a
 "claim-by-claim analysis" in determining
 whether to award attorney fees, independent of any
 determination as to the amount of that fee award. He makes
 this argument by pointing to the language in section
 13-17-103(1) requiring a court to "specifically set
 forth the reasons for said award . . . [i]n determining
 whether to assess attorney fees and the amount of
 attorney fees to be assessed." (Emphasis added.) The
 "and," Cucarola suggests, means that a full
 analysis must occur at the moment of determination that any
 fee will be awarded, even if the determination of the award
 amount is deferred. We do not believe the quoted language
 supports Cucarola's argument. While the trial court

 must consider the factors in section 13-17-103(1) in
 "determin[ing] whether the action in question (or any
 part thereof) 'lacked substantial justification,
 '" Munoz v. Measner, 247 P.3d 1031, 1034
(Colo. 2011), and in assessing "the amount of such
 fees," In re Marriage of Aldrich, 945 P.2d
 1370, 1378 (Colo. 1997), the statute does not break these two
 determinations apart for review. The granting of an award of
 attorney fees encompasses both whether to assess
 fees and for how much. The court will be required to
 set forth its analysis of the appropriateness of any fee
 award when it holds the hearing on that issue. It bears
 emphasizing that the water court made it clear in its
 February 19 order, again in its ruling on Cucarola's Rule
 59 motion, and again in its order granting a stay of the
 hearing on attorney fees pending this appeal, that it would
 be accepting written pleadings and holding a hearing as to
 the amount of attorney fees and the apportionment of those
 fees. It would be a waste of judicial resources for this
 court to consider whether the water court has met the
 requirements of section 13-17-103 before the water court even
 conducts its hearing and completes its findings on the amount
 of the award.

 ¶67
 Even accepting Cucarola's argument that the court was
 required to make specific findings before deciding
 whether to award fees, the water court's oral
 findings at the close of argument on Serratoga's Rule 41
 motion, as well as its February 19 ruling, did
 "specifically set forth the reasons" for the
 decision to award fees. For example, as to Glover's claim
 that Mr. McDowell should be found

 liable in his individual capacity (one of the claims for
 which fees were awarded), the court found that there had
 "not been one scintilla of evidence" and that the
 absence of evidence "was made crystal clear throughout
 the course of the testimony." The court further found
 that there had been many allegations pressed by Glover and
 Cucarola that Serratoga was "hiding the ball and
 conspiring and acting with malice and intentionally, that
 [Serratoga had] purportedly attempted to slander title and
 convey property fraudulently. There just is no evidence to
 support any of the allegations." Throughout its oral
 ruling on the Rule 41 motion and its February 19 ruling on
 the remaining matters, the court explained in different ways
 that the dismissed claims lacked any substantial
 justification. The court's findings were sufficient, and
 they did not deny any due process rights.

 ¶68
 Cucarola also argues that he is entitled to a separate
 hearing and written briefing on the issue of attorney fees
 pursuant to Rule 121, section 1-22. This argument is correct,
 as far as it goes. But Cucarola ignores the fact that the
 water court very specifically provided in its February 19
 ruling that it would be accepting written briefing pursuant
 to Rule 121 and that it would hold a hearing if one was
 requested. And, as we have explained, the court specified on
 multiple occasions that the briefing and hearing would
 address both the amount of the attorney fees award and its
 apportionment. Cucarola's assertion that he has been
 denied due process under these circumstances is frivolous.

 F.
Appellate Attorney Fees

 ¶69
 Serratoga has asked us to award appellate attorney fees in
 this appeal. While we do not believe that fees are
 appropriate for all of the arguments raised by Glover and
 Cucarola, we do believe that certain claims merit an award of
 attorney fees.

 ¶70
We may award attorney fees for costs incurred on appeal if we
 determine "that an appeal or cross-appeal is
 frivolous" pursuant to C.A.R. 38(b). See also In re
 Est. of Shimizu, 2016 COA 163, ¶ 34, 411 P.3d 211,
 219 (describing an award of fees for a "frivolous"
 appeal under section 13-17-102). The purpose of doing so is
 "to deter 'egregious conduct,' and not to
 discourage legal theories that, while having no support in
 our extant decisional law, nevertheless may be persuasive by
 virtue of the unique character of the case." Wood
 Bros. Homes, Inc. v. Howard, 862 P.2d 925, 935 (Colo.
1993). It follows then that we award appellate fees only
 "in cases that are clear and unequivocal."
Id. In this case, we conclude that several of the
 claims pursued on appeal are so frivolous that they merit an
 award of attorney fees.

 ¶71
 In particular, Cucarola's assertion that the water court
 denied him due process rests on such a disregard of the
 record-including the court's specific findings as to the
 lack of substantial justification for the claims that were
 dismissed and the court's express invocation of Rule 121
 in its February 19 ruling, together

 with the stay of the hearing on fees pending this appeal-that
 the claim can only be fairly described as frivolous.

 ¶72
 The same is true of Glover's claim on appeal that the
 water court failed to declare all of the parties' rights
 and duties in the subject easements. The water court gave
 declarations of the interests at multiple points during
 trial. Most notably, it summarized those rights in its
 detailed order denying Glover's Rule 59 motion in
 response to the same request. This claim asks for something
 the water court already provided at length and is frivolous.

 ¶73
 Similarly, Glover's claim on appeal that the water court
 lacked jurisdiction because of the lack of publication of a
 resume notice disregards well-established principles of water
 law, including our decision in King Consol. Ditch,
 250 P.3d at 1235. This claim unequivocally lacks any merit.

 ¶74
 Finally, Glover and Cucarola pursued an appeal on claims that
 the water court repeatedly warned the parties lacked any
 evidence or support at multiple points during the water court
 proceeding. See Spring Creek Ranchers Ass'n v.
 McNichols, 165 P.3d 244, 246 (Colo. 2007) (affirming
 that an attorney was being "stubbornly litigious"
 where he brought "repetitive arguments lack[ing]
 substantial justification and lengthened the water court
 proceeding"). This disregard for existing law without
 credible supporting arguments warrants some award of fees to
 Serratoga, which had to expend additional resources to defend

 these meritless arguments on appeal. In particular, the
 appellate claims as to trespass on a water right, nuisance,
 acting with malice, fraudulent conveyance, civil conspiracy,
 and the application of criminal statutes in the civil realm
 are so lacking in substance as to be frivolous.

 ¶75
 For these reasons, we award Serratoga reasonable appellate
 attorney fees on the specific claims identified here, for
 which the amount will be determined on remand to the water
 court.

 III.
Conclusion

 ¶76
 For the reasons set forth above, we conclude that the water
 court properly exercised jurisdiction over the present case,
 and we affirm the water court's judgment, including its
 award of attorney fees. We also award Serratoga reasonable
 appellate attorney fees for specific claims and remand to the
 water court for further proceedings consistent with this
 opinion.

---------

Notes:

[1] Resource Land Holdings LLC; Serratoga
 Falls LLC; Kitchel Lake Development Corporation; Kitchel Lake
 Partners, LLC; along with various individual members of those
 entities, were all involved in this ditch dispute as the
 residential property development proceeded. We refer to these
 parties collectively as "Serratoga."

[2] Kiefer owns the Paige Brothers
 Reservoir. It fills from an inlet ditch that collects
 irrigation seepage and other water from a wetland area
 referred to as the Paige Seep.

[3] Prospect Lateral is located in Timnath
 along Prospect Road, which separates Glover's property
 and Serratoga's property. Prospect Lateral is a
 "borrow ditch," created contemporaneously with the
 construction of a road to "furnish fill and provide
 draining." Application for Water Rts. of
 Huffaker, 2019 CO 28, ¶ 1 n.1, 439 P.3d 1224, 1226
 n.1 (quoting Borrow ditch, 2019 Merriam-Webster
 Online Dictionary,
 https://www.merriam-webster.com/dictionary/borrow%20ditch
 [https://perma.cc/36RH-RKRZ]). Timnath ordered
 Serratoga to widen Prospect Road as part of their development
 activities, which required relocation of the borrow
 ditch.

[4] Cucarola filed his own notice of
 appeal, contesting the water court's jurisdiction and
 asserting arguments pertaining to the water court's
 findings on the award of attorney fees and his own right to
 due process. His arguments on appeal are addressed in this
 decision.

[5] Glover's first claim for relief
 requested the determination of "all quality, quantity
 and timing of irrigation flows for [his] use of water on [the
 KG Lateral]." His fourth claim for relief sought a
 declaratory judgment to those amounts in the KG Lateral,
 stating that Glover is "entitled to a declaration of the
 present and future amounts of water they may convey through
 the existing KG Lateral, any modification thereof, and the
 quality, quantity and timing thereof." Lastly,
 Glover's fifth claim sought a declaratory judgment for
 "all rights to use water as associated with decreed
 rights in the Paige Brothers Seepage Ditches and Reservoir in
 view of [Serratoga's] proposed construction," as
 well as injunctive relief to prevent Serratoga from
 interfering with those rights.

[6] Only Mr. Kiefer brought claims for the
 Prospect Lateral, so we refer to him as a singular plaintiff
 in this discussion.

---------